IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

           Plaintiff,    :    Case No. 1:13-cr-108 (2)
                                   Also 1:16-cv-354

                                   District Judge Susan J. Dlott
   - vs -                      Magistrate Judge Michael R. Merz
BERNARDO OLIVARES-CEPEDA,

           Defendant.    :

## REPORT AND RECOMMENDATIONS

      This case is before the Court for decision on the merits of Defendant's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 156). In response to the Motion, the Magistrate Judge ordered the Government to file an Answer (ECF No. 158) which the Government has now done (ECF No. 166). Defendant asked the Court to ignore the Answer because it was late (ECF No. 168), but the Court denied that request (ECF No. 169). In the Order denying that request, the Court reminded Mr. Olivares-Cepeda that he was permitted to file a reply to the Answer by October 28, 2016, but he has not done so and his time to file a reply has expired.

      Olivares-Cepeda pleaded guilty to conspiracy to distribute methamphetamine pursuant to a written Plea Agreement filed January 27, 2014 (ECF No. 63). As part of the Plea Agreement, Olivares-Cepeda signed the attached Statement of Facts in which he admitted conspiring with others to have approximately six kilograms of crystal meth brought to Cincinnati, Ohio, and

there distributed for cash.  As part of the Statement of Facts, Olivares-Cepeda admitted stating to the intended recipient that "the crystal methamphetamine was 'good stuff' but offered that if it was 'trash' then they would send it back."  *Id.*  at ¶ 11.  During the plea colloquy, Olivares-Cepeda admitted he had discussed the charges with his attorney and understood the meaning of the charged offense of conspiracy (Tr., ECF No. 146, PageID 696).  Mr. Olivares-Cepeda was sworn and then answered Judge Dlott's questions. *Id.*  at PageID 697.  He again stated he understood the charges, that his attorney was fully informed, and that he was fully satisfied with the legal advice he had been given.  *Id.*  at PageID 699.  He indicated he understood Judge Dlott could only determine a sentence after considering the Presentence Investigation Report ("PSR") that would be prepared by the Probation Department, but that he would have an opportunity to challenge the facts or conclusions made in the PSR.  *Id.*  at PageID 703-04.  Olivares-Cepeda admitted he had read the Plea Agreement, discussed it with counsel, and understood its terms. *Id.*  at PageID 711-712.  As is her practice, Judge Dlott had the elements of the conspiracy offense read and Mr. Olivares-Cepeda admitted he was guilty of each of the elements.  *Id.*  at PageID 713-714.

When the Statement of Facts was read, Olivares-Cepeda demurred somewhat:

> The Court:  Did you hear what the special agent just said?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  Is what he said correct?
>
> The Defendant: Not all of it, but yeah.
>
> The Court:  Well, what isn't correct?
>
> The Defendant:  Well, correct isn't that – I'm not to sure what a conspiracy is.  So I never met Ivan De Los Santos or the other people.  And the only person that I talked to and I committed the

>error of speaking to, which I don't know, is his informant and that's what's making me part of this. So I did have idea what was going on. I didn't know what was it. I know it was wrong so ---
>
>Mr. Williams. I've explained to him, Your Honor, that his connection with Caro and the fact that he's tied in with him, the fact that he made the statements about the narcotics that were being transported up there gives him knowledge of what was going on but he doesn't have to know or even speak with other members of the conspiracy –
>
>The Defendant: Yes
>
>Mr. Williams: -- to be guilty of conspiracy. And so he admits his guilt in the conspiracy as he is involved with Caro.
>
>The Defendant: Yes, ma'am
>.
>Mr. Williams: But he does not admit he knew these other three guys.
>
>The Defendant: I never met them before.

*Id.* at PageID 719-21. After this discussion, Olivares-Cepeda again admitted that he was in fact guilty of conspiracy to possess with intent to distribute methamphetamine. *Id.* at PageID 721. Judge Dlott found the plea to be knowing and voluntary and accepted it. *Id.* at PageID 722. Before concluding the proceeding, she again stated Defendant would have an opportunity to challenge errors or discrepancies in the PSR. *Id.* The only Objection Defendant first made to the PSR was his claim that he should have been given a 2 level reduction as a minor participant (Objections, ECF No. 65, PageID 282). Then two months later, in an Addendum to the Objections, he denied having made the statement to the confidential informant that he had previously admitted (ECF No. 88).

3

At sentencing Mr. Williams argued Mr. Olivares-Cepeda was a minor participant and should receive that classification under the Sentencing Guidelines (ECF No. 147, PageID 734). The Government presented testimony that the statement was made from the lead case agent, Candice Flahert, and had presented the same testimony form Agent Baker at a bond review hearing. *Id.* at PageID 736, 742. Government's counsel also adverted to post-arrest statements made by Mr. Olivares-Cepeda, reported in the PSR, which show much great involvement in the drug business than merely "riding along" with his brother-in-law, Defendant Caro. *Id.* at PageID 738. Ultimately Mr. Williams indicated Mr. Olivares-Cepeda had admitted his guilt from the time of his arrest and did not want to withdraw his plea. Offered an opportunity to speak further, Defendant said nothing about withdrawing his plea. Adopting a Guideline range of 188 to 235 months, Judge Dlott sentenced Olivares-Cepeda to 200 months imprisonment. *Id.* at PageID 763.

Defendant asserts that his conviction is unconstitutional because he was deprived of the effective assistance of counsel. He claims his attorney did not understand the law of conspiracy, relied on false facts as a result of failure to conduct an adequate pre-trial investigation, and failed to consult with him on the offer to allow him to withdraw his guilty plea and go to trial (Motion, ECF No. 156, PageID 836).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the

4

> defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance*, 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

The Supreme Court has made it clear that the right to effective assistance of counsel fully applies at the plea negotiation stage of criminal proceedings.  *Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

Although Olivares-Cepeda makes broad and conclusory allegations about what he did not know before signing the Plea Agreement, his real claim seems to be that Mr. Williams should have had the recording translated and transcribed before the Plea Agreement was signed. But the record shows that the playing of the recording before the plea was cut-off at Olivares-Cepeda's request. That is, he was given an opportunity to hear the whole recording before he swore under oath that he had said what the Government claimed he said to the informant. Moreover, he had ample opportunity to say what he did not understand about conspiracy before he told Judge Dlott twice that he understood the offense he was pleading to. And he was in the courtroom when Judge Dlott offered to allow withdrawal of the guilty plea and did not speak up, either to say he wanted to go to trial or to ask for an opportunity to confer with counsel.

Defendant appealed to the Sixth Circuit which affirmed his conviction, finding his plea knowing and voluntary and reciting many of the admissions repeated above. *United States v. Olivares-Cepeda*, Case No. 14-3701 (6th Cir. Apr. 10, 2015)(unreported, copy at ECF No. 151).

The only thing Mr. Olivares-Cepeda adds to the record that was not before this Court at sentencing or before the Sixth Circuit on appeal is the Affidavit of Heriberto Caro, his co-defendant (ECF No. 156-1, PageID 850). He swears that Olivares-Cepeda "was only a passenger in my car and was not involved in the transaction in any way.  However, he was aware of what I was doing. [He] derived absolutely no benefit from the drug transactions. He was merely and only along for the ride and to keep me company." *Id.* However, as the United States points out, these statements are directly contradictory to statements Mr. Caro made in his own Plea Agreement and in his change of plea proceeding (ECF No. 166, PageID 903, citing ECF No. 39 and 146).

A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes*, 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst*, 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady*, 397 U.S. at 755. The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Id.* at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.  *United States v. Broce*, 488 U.S. 563, 570 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Olivares-Cepeda's guilty plea was taken, as the Sixth Circuit found, in compliance with Fed. R. Crim. P. 11.  He swore to the truth of the Statement of Facts and his co-defendant Caro did likewise.  Even if the recording was not transcribed before the plea, the transcript was available at the time of sentencing and the DEA agent testified to the truth of the statement made to the informant which Olivares-Cepeda had admitted when pleading guilty and never repudiated until filing the instant Motion.

**Conclusion**

Defendant's claims of ineffective assistance of trial counsel are without merit and the instant Motion should be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

November 8, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).